## JOHNSON *v.* GRAND TRUNK RAILWAY.

The plaintiff had attached a lot of lumber as the property of P., upon a writ against him, and had left a copy of the writ and return with the town-clerk in the town where the lumber was situated. Afterward P. employed the defendant company to freight this lumber for him, but before it was moved the plaintiff notified the company of his attachment, and forbade their moving the lumber. But the company removed it according to their contract with P. ;—*Held*, that the company was liable to the plaintiff in trover for the lumber.

TROVER, for one million feet of pine boards. The issue was tried by the court, and the following facts found: On the 24th of April, 1858, a writ was duly issued in favor of Henry Fling against Moses Pattee, of Bethel, Me., returnable at the November term of the court of common pleas for Coös county, 1858. This writ was given to said Johnson, who was then a deputy sheriff for said county, for service, April 26, 1858, who attached, as the property of the defendant, all the merchantable white pine boards lying about the depot, between the railroad track and the river road, in Berlin, in said county, and left an attested copy of the writ and of his return thereon at the dwelling-house of Dexter Wheeler, town-clerk of said town of Berlin, at 12 o'clock at noon of said day.

On the 26th day of May, 1858, personal service was made on said Pattee at said Berlin.

On said 26th day of May said Johnson found said Pattee and his hands loading this lumber upon the cars. He forbade their moving the lumber, and notified A. A. Knight, the station agent of the railroad at that station, of the attachment of this lumber, and ordered him not to let the lumber go off upon the cars, and notified him, if he did so, said Johnson would hold the railroad company responsible for the same. This was before any of the lumber had started from the depot, though some of it was loaded upon the cars. This lumber was lying upon the company's grounds, kept and used for such purposes, when it was attached, and it was all carried off by the company for said Pattee on their cars, on or immediately after May 26, 1858. At the May term of said court, 1859, judgment was rendered in said action for $237.18 damages, and $15.93 costs, and execution issued thereon, which was given to said Johnson for collection, who, August 27, 1859, demanded said lumber of said Knight, then the station agent of said road at said Berlin, and on the 1st day of November, 1859, returned said execution wholly unsatisfied, with the return of *nulla bona.*

This suit was commenced March 23, 1860, and was brought to recover damages for the lumber thus carried away by the defendant as aforesaid; and by agreement of parties the questions of law arising upon this case were reserved and assigned to the law term; judgment to be ordered for the plaintiff or defendant, as the opinion of the court might be, with the right to have the damages assessed by a jury, or otherwise, as the parties might agree, should judgment be ordered for the plaintiff.

*Benton & Ray,* for the plaintiff.

*Burns & Fletcher,* for the defendant.

SARGENT, J. The question as to the original ownership of the property in dispute does not arise. It was attached as Pattee's, and no one but Pattee ever made any claim to it afterward, except the officer who made the attachment. The defendant company was employed to transport the lumber by said Pattee, and the only question they had to settle was not whether Pattee owned the lumber originally, but whether he, as original owner, or the officer who attached it, was entitled to the possession and disposition of the lumber.

It does not become necessary to consider how the case would have been had the company carried away this lumber without knowledge of the attachment; as in this case it is found that Johnson, before any of it was carried away, notified the agent of the company of his attachment. Now this attachment by the officer gave him the legal possession and the right to possession, so that he can maintain trover for the conversion of it. *Kittredge* v. *Warren,* 14 N. H. 526; *Lathrop* v. *Blake,* 23 N. H. 46.

Johnson had forbidden the defendant to move the lumber, and the defendants therefore were called upon to elect whether they would obey Pattee's orders, and carry away the lumber for him, or regard the claims of the officer who had attached it, and follow his directions; and they chose the former; and their act in carrying away the property beyond his reach and control, and contrary to his express orders, with full knowledge of his claim, is clearly a conversion of the property. It is not material whether the defendants supposed they were doing right in obeying Pattee's orders, or whether — as is more probable under the circumstances — they were indemnified by Pattee against the claims of the plaintiff; still they are liable to this plaintiff. Where a carrier delivered goods by mistake to a wrong person, or where he did so upon a forged order, and there was no intentional wrong on his part, yet the owner may maintain trover against the carrier. *Devereux* v. *Barclay,* 2 B. & Ald. 702; *Stephenson* v. *Hart,* 4 Bing. 476; *Lubbock* v. *Ingliss,* 1 Stark. 104; *Hawkins* v. *Hoffman,* 6 Hill 586.

In this case the officer had attached the property and had preserved his lien upon it by leaving a copy of the writ with the town-clerk, according to the provision of the statute. His rights in this case are analogous to those of a mortgagee of the property.

*Flanders* v. *Colby*, 28 N. H. 34, was a case of mortgaged property, but the law of that case will be found to go farther than is necessary to maintain this suit. It is there held that if the defendant aid the mortgagor of personal property in carrying it away and concealing it, he will be liable therefor to the mortgagee in an action of trover, even though he might not have known of the existence of the mortgage. See *Reynolds* v. *Railroad*, 43 N. H. 580.

The damages may be assessed according to the agreement in the case, as there must be

*Judgment for the plaintiff.*